RINDER, County Treasurer, Respondent, vs. CITY OF MADISON and others, Appellants.

*May 6—June 13, 1916.*

*Constitutional law: Highways and bridges: Highway district: Taxation: County system: Classification of highways: Exclusion of city streets: County committee: Delegation of powers of county board and clerk: Auditing of claims: County commissioner: City treasurer: Failure to settle taxes: Penalty.*

1. The provisions of secs. 1317m—1 to 1317m—15, Stats. 1915, establishing the county as the highway district and imposing burdens on the taxable property therein for defraying the cost of improving and maintaining the highways of the county system, are valid, the law being general and operating uniformly throughout the state and upon the residents within each county.

2. The exclusion of city streets from the county system of highways, while town highways and connecting streets in villages may be included therein, is within the power of the legislature, and does not unreasonably discriminate against the rights of the residents of cities or deprive them of the equal protection of the laws. It does not affect the political rights of city residents differently than those of other residents of the counties in localities where the local highways are not made a part of the system.

3. The classification of highways so made is legitimate; it is not arbitrary, but is based upon peculiar conditions in respect to

construction, improvement, and use, which distinguish city streets from the highways in towns and villages.

4. Sub. 8, sec. 1317m—5, does not unlawfully delegate to the county committee therein provided for constitutional powers or authority of the county board or county clerk—the powers and duties of the committee being administrative only.

5. Par. (3) (e) of said sub. 8, making it the duty of said county committee to "audit," together with the county clerk, claims for services and material, is not to be interpreted as abrogating the duties imposed by law on county clerks, or as giving the committee the ultimate power to allow or disallow such claims.

6. The authority given to the county highway commissioner by sub. 3, sec. 1317m—7, does not conflict with the authority of the county board to audit and determine the validity of claims, nor does that subsection repeal the laws in force at the time of its adoption as to the powers and duties of the county board and county clerk respecting claims against the county.

7. The property in a city which is required by law to maintain its own bridges is not taxable, under sec. 1319, Stats., for the building of bridges in towns.

8. The five per cent. penalty provided for in sec. 1117, Stats., for failure of a town, city, or village treasurer to make settlement of the taxes included in his tax roll, is to be imposed for failure to perform official duties, but should not be imposed upon a city treasurer who had collected the tax levied for the county highway fund and was ready to settle with the county treasurer within the time required by law, but was directed by the common council to retain the money until the validity of the law authorizing the tax had been tested in legal proceedings—the constitutional questions involved being of sufficient gravity to justify him in obeying such direction.

APPEAL from a judgment of the circuit court for Dane county: A. H. REID, Judge. *Modified and affirmed.*

The action is brought by the plaintiff as county treasurer of Dane county against the defendants upon the bond of the city treasurer furnished to the county treasurer and conditioned for the payment of the county and state taxes.

The plaintiff is and was county treasurer and the defendant *Carl Moe* is and was city treasurer and the other individual defendants are the bondsmen of the city treasurer. The city of *Madison* is a municipal corporation having no prospective

state highways within its corporate limits. At the annual meeting of the county board of Dane county in November, 1915, a tax of eight tenths of a mill was levied upon all the taxable property in Dane county for the county highway fund, which tax amounted to $129,658.15. Of this amount there was apportioned and certified by the county clerk to the city of *Madison* the sum of $47,110.58, which was required to be raised by the city of *Madison* for county highway improvements. This sum was levied by the city of *Madison* and the city treasurer collected and now has such sum in his possession. He was directed by the common council not to pay it to the county treasurer. Of the $129,658.15 levied by the county board of Dane county as aforesaid the sum of $16,000 was levied for county bridge aid, petitions for which were properly filed and the proper proceedings taken under sec. 1319, Stats. The sum of $47,110.58 apportioned to the city of *Madison* for the county highway improvement includes $5,813.51 of this tax for building bridges. After deducting this sum there remains a balance of $41,297.07 as the proper amount apportionable to the city of *Madison* under the state aid highway law.

The circuit court held that the county board had no right to levy the tax of $5,813.51 on the city of *Madison* for the purpose of building county bridges, and that the tax of $41,297.07 was properly levied as the city's portion of the county highway fund pursuant to the state aid highway law, and judgment was entered in favor of the plaintiff in the sum of $41,297.07 with interest at the rate of ten per cent. per annum and a penalty of five per cent. for withholding payment of this tax after it was demanded. From such judgment this appeal is taken.

For the appellants *City of Madison* and *Carl Moe,* city treasurer, there was a brief by *William Ryan,* city attorney, and there was also a brief on behalf of the *City* by *Frank W. Lucas,* member of the common council and counsel for the

*City;* and the cause was argued orally by *Mr. Ryan, Mr. Lucas,* and *Mr. William R. Bagley.*

*Harry Sauthoff,* district attorney, for the respondent.

There was also a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, as *amici curiæ,* and oral argument by *Mr. Gilman.*

SIEBECKER, J.   The city of *Madison* and its treasurer claim in justification of the refusal to pay the county the sum of $41,297.07 collected by the city and now in the treasurer's possession as a tax on the taxable property of the city that parts of the provisions of secs. 1317m—1 to 1317m—15, Stats., under which the tax was levied by the county, are in conflict with the state constitution and therefore void.   This tax was collected pursuant to a levy of the Dane county board to raise a county highway fund under the provisions of this law.   It appears that this amount had been apportioned and certified by the county clerk as the city's share of such county tax.   The city of *Madison* does not question that the exertion by the county of its taxing power was for the public purpose of providing and maintaining a system of county highways for public travel.   It is however contended by the defendants that the parts of the statutes creating the county highway system which provide that the system "shall begin at the corporate limits of the county seat and of the various market towns and railroad stations of the county and include the main traveled highways leading into each town in the county," and that the county board shall add to this system "such streets in incorporated villages as directly connect the ends of roads then on said system, and such streets when so added, . . . shall become a part" of this county highway system (par. (a), (b), sub. 1, sec. 1317m—3), constitute an arbitrary classification of highways, resulting in unreasonable discrimination against the rights of the people in such cities, and depriving them of the equal protection of the law.   The

argument is made that the exclusion of city streets from the county system of highways deprives city residents, as an integral part of the county taxing district, from receiving the benefits of the taxes imposed on them for highway improvements and confers the benefit of such tax on the residents of towns and villages, and thus subjects them to a system of taxation that violates the rule of uniformity guaranteed by the constitution and deprives them of the equal protection of the law in bearing the burdens of taxation.

If the selection of highways for the county system is a proper classification within the constitutional powers of the legislature, then no constitutional infirmity is apparent in the legislation here assailed. The scope of the legislative power to deal with the subject of establishing taxing districts for the maintenance and improvement of the highways in the state is exemplified by the legislation embodied in the statutes of this state and by the various cases where such legislation has been assailed as an improper exercise of this power shown by the recorded decisions of this court on the subject. Discussion of the questions here involved could add nothing to the full elaboration of them in former decisions of this court and we therefore deem it sufficient to reiterate in part what has been said by this court on the subject. In *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 303, 40 N. W. 482, Mr. Justice TAYLOR, speaking for the court, declares:

"If a rule for taxation should be adopted which limits the right of taxation for public improvements to such property only as it can be shown is directly benefited by such improvement, it would result in endless confusion and litigation, and render void very many acts for the government of towns and counties. . . . It is for the legislature to fix the limits of the taxing district, and not for the courts. . . . This court has affirmed the validity of the law concerning the building of bridges, which compels the whole county to contribute to the building of a bridge in one town, and that without regard to the question whether the bridge to be built would be any direct benefit to any other town in the county."

The court also states that no rule of public policy forbids taxation of property for any public purpose which may not directly benefit such property, "and that the justice or injustice of the limits of the taxing district, when fixed by the legislature or some other authority authorized by law to fix the same, cannot be questioned by the courts." In *Jensen v. Polk Co.* 47 Wis. 298, 2 N. W. 320, it was declared:

"The legislature must in all cases determine by law what locality or division of the state shall be burdened with the expenses of opening and repairing highways. . . . There can be no doubt as to the power of the legislature to compel the several counties of the state, by general law, to open and work the state roads laid out and located within their respective boundaries; and unless there be some clause of the constitution which expressly prohibits it, the power to do so as to a particular road in a particular county is equally clear."

Other cases in this court affirming legislative competency to deal with this class of public improvement adhere to the doctrine that the legislature has power to compel the levy of taxes for such purpose by towns, counties, cities, and villages. This was emphasized in *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 36 N. W. 396, and was there justified on the ground that

"Highways and bridges are matters of general concern to the people of the whole state; yet the expense of making them, and of keeping them in repair, is generally thrown upon the localities where they are situated. Perhaps this is as fair a rule for apportioning the burden as could be devised; still it oftentimes results in making the property in one taxing district contribute more to the same public purpose than the property in another district. . . . The constitution should not be so construed as to prevent the legislature from distributing an exceptional burden over a larger taxing district unless such construction is absolutely demanded by its language."

The court in this case held a law valid which compelled a county to levy a tax upon the taxable property of the county

except the property exempted in cities and villages maintaining their own bridges, to pay one half of the cost of a bridge in one town of the county. See, also, *Battles v. Doll,* 113 Wis. 357, 89 N. W. 187; *Bloomer v. Bloomer,* 128 Wis. 297, 107 N. W. 974; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557; *State ex rel. Carey v. Ballard,* 158 Wis. 251, 148 N. W. 1090; *Alexander v. McInnis,* 129 Minn. 165, 151 N. W. 899; *Chicago, R. I. & P. R. Co. v. Murphy,* 106 Iowa, 43, 75 N. W. 680. It is manifest from these adjudications that the provisions of secs. 1317m—1 to 1317m—15, Stats. 1915, establishing the county as the highway district and imposing the burdens on the taxable property therein for defraying the cost of improvement and maintenance of the system of county highways, are a proper exertion of the legislative power. It is a general law operating uniformly throughout the state and upon the residents within each county. The alleged injustice to residents of cities by compelling them to contribute to the improvement of highways located outside of their municipal territory presents no constitutional objections, and if actual inequalities of burdens result that is a subject for legislative consideration. We discover nothing in the provisions of these statutes excluding city streets from the system of county highways that affects the political rights of city residents differently than those of other residents of the counties who may perchance reside in localities where the local highways are not made a part of the system. The argument of defendants seems to assume that cities as municipal corporations have special rights, as such, that are invaded. Towns, villages, and cities may be united into a single highway district, as above shown, and when so united constitute a political subdivision of the state for that purpose, and if the laws governing them operate generally and uniformly throughout the district there is no invasion of the constitutional rights of the different local governments. It is strenuously argued that there is no distinction between streets

in cities and villages in relation to the county highway system, and hence exclusion of the highways of one and inclusion of those of the other is false classification, because the public purpose of improving the highways of the state reasonably requires that no distinction be made between these localities. The distinctions between cities and villages in their corporate political and governmental conditions have often been - adverted to in the decisions. In *State v. Evans,* 130 Wis. 381, 110 N. W. 241, Mr. Justice DODGE, after referring to a number of such decisions, states: .

"That there are distinctions between large and dense communities and small and sparser ones as separate classes is, of course, obvious. That such differences are germane and relative to some purposes of legislation has been declared, almost without limit, by courts. *Smith v. Burlington,* 129 Wis. 336, 109 N. W. 79, and cases there cited. . . . As to the cogency or propriety of either the regulations made or of the importance of the distinctions, as we have so often said, the courts have little concern. Those subjects rest with the legislature, and only when the court, in the exercise of the utmost deference toward that other branch of the government, is compelled to say that no one in the exercise of human reason and discretion could honestly reach a conclusion that distinctions exist having any relation to the purpose and policy of the legislation, can it deny it validity" (citing).

The case proceeds to point out the many distinctions between urban and rural communities which are proper considerations for legislative discretion in exercising the lawmaking power in behalf of each class. And so here the peculiar conditions that are necessarily incident to and distinguish the construction, improvement, and use of city streets from the construction, improvement, and use of town and village roads and streets are so marked and varied that they present a legislative question in deciding whether or not it would be practicable and feasible to include city streets as a part of the system of county highways contemplated by this law. We are convinced that the conditions and uses of city streets as compared

with the town and village highways present a proper subject for legislative discretion concerning the desirability and practicability of uniting them into one system of county highways, and that the legislature did not transgress its power in this respect.

Another consideration urged by defendants is that the provisions of sub. 8, sec. 1317m—5, Stats. 1915, creating a committee to be elected or appointed by the county board to act with the state highway commission and the county commissioner in the administration of the law, are invalid. The powers and duties of this committee are specifically prescribed. It is contended that this subsection delegates powers and authority to such committee which are conferred by the constitution on county boards and county clerks. These powers and duties of this committee are clearly administrative in their nature and in no way conflict with the duties imposed by law on county clerks. The committee can only carry out the road improvement authorized by the county board and perform administrative features connected therewith. It is suggested that they have the ultimate power to pass on the legality of claims for services and material furnished for the construction of roads and bridges. The duty to "audit" such claims as provided by par. (3)(e) of this subsection is not to be interpreted as abrogating the duties imposed by law on county clerks, nor is it to be considered that such "audit" implies that the committee is given power to finally pass on the allowance or disallowance of claims against the county. It is evident that their duties under this part of the act are to examine claims to ascertain whether or not they pertain to and properly itemize the charges for material furnished and work done, and to check the items as to their correctness in these respects to assist the county clerk and the county board to determine whether they are just and legal claims. We think the authority of the county highway commissioner under sub. 3, sec. 1317m—7, Stats., does not conflict with the authority

of the county board to audit and determine the validity of claims paid by the commissioner in the prosecution of the work authorized by the county, and that these provisions do not repeal the laws in force when this section was adopted, respecting the authority vested in the county board and county clerk prescribing their duties pertaining to claims against the . county.

The judgment appealed from correctly excluded recovery of the sum of $5,813.51 as taxes levied for county aid to the building of bridges in towns pursuant to the provisions of sec. 1319, Stats. . The trial court awarded recovery of $41,297.07 and imposed a five per cent. penalty on this amount under sec. 1117, Stats. 1915, upon the authority of *Oneida Co. v. Tibbits*, 125 Wis. 9, 102 N. W. 897. In the *Tibbits Case* the town treasurer, through his failure to collect the town tax as required of him, was unable to make settlement of the taxes included in his tax roll within the time required by law and hence he was subjected to the five per cent. damages provided by this section. It is manifest from the provisions of this section that these penalties are imposed on the treasurer for official delinquencies resulting from his failure to perform the duties imposed on him by the law. ' The defendant *Carl Moe,* as city treasurer, had performed the duties of collecting this tax and was ready to settle with the county treasurer for the tax within the time required by law, but was directed by the common council of the city to retain this money until the validity of the law authorizing the tax had been tested in legal proceedings. The challenged legislation involved constitutional questions of sufficient gravity to justify the treasurer in obeying the direction of the common council. Under these circumstances it cannot be reasonably said that the city treasurer has failed to perform his official duties within the requirement of sec. 1117, Stats. 1915. To hold otherwise would penalize the treasurer for obeying the commands of the common council and for protecting himself and his bondsmen

against a possible liability for the whole tax, if the courts found it to be invalid.    Under these circumstances and conditions it must be held that the city treasurer is not subject to the penalty provided by sec. 1117.    From this it follows that the court erred in awarding recovery of five per cent. damages on the amount due the county.    The judgment must be modified by deducting therefrom the sum of $2,064.85, and as so modified the judgment is affirmed.

*By the Court.*—It is so ordered.